# EXHIBIT 6

Dated 28 August 2009



**GRANDUNION INC.**
**as Guarantor**

to

**MARFIN EGNATIA BANK Societe Anonyme**
**as Lender**

---

**GUARANTEE AND INDEMNITY**
relating to revolving credit facility made available to
Grand Rodosi Inc. and Grand Anemi Limited

---

**V&P**
**L A W   F I R M**

## TABLE OF CONTENTS

1.  Recital .................................................................................................................................... 1
2.  Definitions................................................................................................................................ 1
3.  Representations and Warranties............................................................................................ 4
4.  Guarantee and Indemnity....................................................................................................... 4
5.  Interest ..................................................................................................................................... 5
6.  Payment ................................................................................................................................... 5
7.  Liability .................................................................................................................................... 5
8.  Undertakings ........................................................................................................................... 6
9.  Variations .............................................................................................................................. 10
10. Waiver .................................................................................................................................... 10
11. Continuing Guarantee, Discharge and Set-Off.................................................................. 11
12. Documents, etc. .................................................................................................................... 11
13. Transfer .................................................................................................................................. 12
14. Release ................................................................................................................................... 12
15. Subordination ........................................................................................................................ 12
16. Invalidity ................................................................................................................................ 13
17. Guarantee and Indemnity Document ................................................................................... 13
18. Notices ................................................................................................................................... 13
19. Proper Law and Jurisdiction ................................................................................................ 15

SCHEDULE 1:  Representations and Warranties
SCHEDULE 2:  Form of Financial Agreement
SCHEDULE 3:  Form of Master Agreement

THIS GUARANTEE AND INDEMNITY is granted the 28th day of ..August.. 2009 by **GRANDUNION INC.**, a corporation organised and existing under the laws of the Republic of the Marshall Islands, having its registered office at Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, Marshall Islands, MH 96960 (the "**Guarantor**") to **MARFIN EGNATIA BANK Societe Anonyme**, a company duly incorporated under the laws of the Republic of Greece, having its registered office at Mitropoleos 20 and Komninon, 546 24 Thessaloniki, Greece and acting in this case through its office at 91 Akti Miaouli, 185 38 Piraeus, Greece (the "**Lender**" which expression shall include its successors and assigns).

1. **Recital**

1.1     By a financial agreement dated .28. August.. 2009 (herein as the same may from time to time hereafter be amended, varied or supplemented called the "**Financial Agreement**") made between the Lender as lender and Grand Rodosi Inc. of the Marshall Islands (the "**Rodosi Owner**") and Grand Anemi Limited of Malta (the "**Anemi Owner**" and together with the Rodosi Owner the "**Borrowers**") as joint and several borrowers, the Lender agreed to make available a reducing revolving facility of up to One hundred Twelve million Dollars ($112,000,000) (the "**Facility**") to the Borrowers on the terms therein stated. A final draft of the Financial Agreement is annexed hereto, is marked as Schedule 2 and is made an integral part hereof.

1.2     By a master agreement (on the 2002 (Multi-currency-Crossborder) form) and Schedule thereto both dated as of 28. August.. 2009, including any Confirmations (as defined therein) supplemental thereto (hereinafter as the same may from time to time hereafter be amended, varied or supplemented called the "**Master Agreement**") made by and among the Lender and the Borrowers, the Borrowers may enter into Designated Transactions with the Lender pursuant to separate Confirmations (as such term is defined in the Master Agreement).  A final draft of the Master Agreement is annexed hereto, is marked as Schedule 3 and is made an integral part hereof.

1.3     It is a condition precedent to the Lender (i) advancing or agreeing to advance the Facility or any part thereof to the Borrowers under the Financial Agreement and (ii) the Lender entering into the Master Agreement with the Borrowers that the Guarantor shall execute this Guarantee and Indemnity in favour of the Lender.

2. **Definitions**

In this Guarantee and Indemnity all capitalised terms not defined herein shall have the meaning stated in the Financial Agreement and in addition thereto:

"**Anemi Ship**" means the m.v. "GRAND ANEMI", a bulk carrier vessel, with gross tonnage of 41,688 tons and net tonnage of 25,530 tons, registered in the ownership of the Anemi Owner under the Maltese flag;

"**Applicable Accounting Principles**" means those accounting principles, standards and practices on which preparation of the Financial Statements is based, which are International Financial Reporting Standards (IFRS) and principles and practices adopted by the Guarantor and its Subsidiaries at the date hereof or at any time thereafter and notified to and accepted by the Lender;

"**Auditors**" means any first class firm of international accountants to be approved by the Lender;

"**Control**" means in relation to a body corporate:

(a)     the power (whether by way of ownership of shares, proxy, contract, agency or otherwise) to:

      (i)     cast, or control the casting of, more than fifty per cent (50%) of the maximum number of votes that might be cast at a general meeting of such body corporate; or

      (ii)     appoint or remove all, or the majority, of the directors or other equivalent officers of such body corporate; or

      (ii)     give directions with respect to the operating and financial polices of such body corporate with which the directors or other equivalent officers of such body corporate are obliged to comply; and/or

(b)     the holding beneficially of more than fifty per cent (50%) of the issued share capital of such body corporate (excluding any part of that issued capital that carries no right to participate beyond a specified amount in a distribution of either profits or capital),

and "**Controlled**" shall be construed accordingly;

"**Designated Transaction**" means a Transaction which fulfils the following requirements:

(a)     it is entered into by the Borrowers pursuant to the Master Agreement with the Lender; and

(b)     its purpose is the hedging of the Borrowers' exposure under this Agreement to fluctuations in LIBOR arising from the funding of the Facility (or any part thereof) for a period expiring no later than the final Repayment Date;

"**Finance Documents**" means:

(a)     the Financial Agreement;

(b)     the Master Agreement;

(c)     the Security Documents; and

(d)     any other document (whether creating an Encumbrance or not) which is executed at any time by any Security Party or any other person as security for, or to establish any form of subordination or priorities' arrangement in relation to any amount payable to the Lender under the Financial Agreement and/or the Master Agreement or any of the documents referred to in this definition or in any other Clause of the Financial Agreement;

**"Financial Statements"** means the audited by the Auditors or unaudited annual or quarterly financial statements of the Group, referred to in Clause 19.1 of the Financial Agreement and Clause 8.2.14 of this Guarantee and Indemnity comprising in each case of a statement of income, balance sheet, cash flow statement and relative notes;

**"Group"** means the Guarantor and its Subsidiaries (whether direct or indirect and including without limitation the Borrowers and the Managing Subsidiary) from time to time during the Security Period and **"members of the Group"** shall be construed accordingly;

**"Guarantor's Liabilities"** means all of the liabilities and obligations of the Guarantor to the Lender under or pursuant to this Guarantee and Indemnity, whether actual or contingent, including (without limitation) interest;

**"Indebtedness"** means any and all moneys, liabilities and obligations (whether actual or contingent, whether existing or hereafter arising, whether or not for the payment of money, and including, without limitation, the Master Agreement Liabilities and any obligation or liability to pay damages) which are now or which may at any time and from time to time hereafter be due, owing, payable or incurred or expressed to be due, owing, payable or incurred from the Borrowers or either of them (whether as principal, surety or otherwise) to the Lender under the Financial Agreement, the Master Agreement and the other Finance Documents;

**"Managing Subsidiary"** means (a) in respect of the Anemi Ship: Stamford Navigation Inc., of the Republic of Liberia, a Subsidiary of the Guarantor and (b) in respect of the Rodosi Ship: Newfront Shipping S.A., of Panama, a Subsidiary of the Guarantor;

**"Master Agreement Liabilities"** means at any relevant time all liabilities actual or contingent, present or future of the Borrowers to the Lender under the Master Agreement;

**"Rodosi Ship"** means the m.v. "GRAND RODOSI", a bulk carrier vessel, with gross tonnage of 37,519 tons and net tonnage of 22,604 tons, registered in the ownership of the Rodosi Owner, under the Liberian flag;

"**Subsidiary**" of a person means: (a) any other person directly or indirectly Controlled by that person; or (b) any other person whose dividends or distributions on ordinary voting share capital that person is entitled to receive more than fifty per cent (50%); or (c) any entity (whether or not so Controlled) treated as a Subsidiary in the financial statements of that person from time to time; and

"**Transaction**" has the meaning given to it in the Master Agreement.

## 3. Representations and Warranties

The Guarantor hereby represents and warrants to the Lender in the terms set out in the Schedule 1.

## 4. Guarantee and Indemnity

In consideration of the agreement of the Lender to (i) enter into the Financial Agreement with the Borrowers (at the request of, *inter alios*, the Guarantor, which is one of the Guarantors as defined in the Financial Agreement), (ii) advance or agree to advance the Facility or any part thereof to the Borrowers and (iii) enter from time to time into Designated Transactions with the Borrowers pursuant to separate Confirmations (as such term is defined in the Master Agreement) and other good and valuable consideration (receipt and sufficiency of which is hereby acknowledged by the Guarantor), and because the Guarantor is a company belonging to the same group of companies as the Borrowers and has related commercial interests with the Borrowers, the Guarantor:

4.1 irrevocably and unconditionally guarantees to the Lender

    (a) the due and punctual performance by the Borrowers of all their obligations of whatever nature (which for the avoidance of doubt, include the Borrowers' liability to pay damages agreed or otherwise) under or in connection with the Financial Agreement, the Master Agreement and the other Finance Documents; and

    (b) to discharge the Indebtedness from time to time on the Lender's first demand together with interest costs, fees and other expenses on the amount demanded in accordance with Clause 5. The liability of the Guarantor shall be to pay to the Lender, on the Lender's first demand, the full amount from time to time owing to the Lender by the Borrowers under the Financial Agreement, the Master Agreement and/or the other Finance Documents; and

4.2 as a separate, additional and continuing obligation, unconditionally and irrevocably undertakes with the Lender that should Clause 4.1 be void or unenforceable against the Guarantor for any reason whatsoever (including, but without prejudice to the generality of the foregoing, by reason of any provision of the Financial Agreement, the Master Agreement and/or the other Finance Documents being or becoming void,

unenforceable or otherwise invalid under any applicable law) then the Guarantor will be liable to the Lender as a sole and principal debtor by way of indemnity for the same amount as that for which the Guarantor would have been liable had that Indebtedness been recoverable and agrees to discharge its liability under this Clause 4.2 from time to time on demand by the Lender together with interest, costs, fees and other expenses on the amount demanded in accordance with Clause 5.

**5.** **Interest**

In addition to the amounts referred to in Clause 4.1 the Guarantor undertakes to pay to the Lender on first demand:

5.1 interest on all amounts due and payable under this Guarantee and Indemnity from the date of demand under Clause 4 above to the date of payment in full (whether before or after judgment) at the rate specified in Clause 8.1 of the Financial Agreement; and

5.2 all legal costs and other expenses on an indemnity basis incurred by the Lender in enforcing the payment of any amounts due under this Guarantee and Indemnity.

**6.** **Payment**

6.1 The Guarantor shall make all payments due to the Lender in Dollars in full in immediately available funds, without set-off or counterclaim or retention and free and clear of and without any deduction or withholding for or on account of any Taxes.

6.2 In the event the Guarantor is required by law to make any such deduction or withholding from any payment hereunder then the Guarantor shall forthwith pay to the Lender for account of the Lender such additional amount as will result in the immediate receipt by the Lender of the full amount which would have been received hereunder had no such deduction or withholding been made.

6.3 The Guarantor shall immediately forward to the Lender official receipts of the relevant taxation or other authority or other evidence acceptable to the Lender of the amount deducted or withheld as aforesaid.

**7.** **Liability**

7.1 This Guarantee and Indemnity constitutes the primary obligation of the Guarantor to the Lender and the Guarantor shall be liable, jointly and severally with the Borrowers and with each other guarantor of the Borrowers' obligations to the Lender (each the "**Other Guarantor**") for the amounts secured by this Guarantee and Indemnity not only as surety but also as if it were the principal debtor under the Financial Agreement, the Master Agreement and the other Finance Documents.

7.2 The liability of the Guarantor under this Guarantee and Indemnity shall not be affected by any legal limitation on the enforcement of, invalidity in or irregularity or

unenforceability of the Financial Agreement and/or the Master Agreement and/or the other Finance Documents or the execution thereof by the Borrowers or any Other Guarantor or by the liquidation, incapacity or any change in the constitution of the Borrowers or either of them or the Guarantor or any Other Guarantor of the Borrowers' obligations to the Lender or by any provisions or enactments relating to bankruptcy or insolvency including, without limitation, any compromise or arrangement with creditors by any one or more of the Guarantor, any Other Guarantor and the Borrowers or any limitation on the powers of the Borrowers or either of them to enter into the Financial Agreement and/or the Master Agreement and/or the other Finance Documents.

7.3 Without prejudice to the generality of Clause 10, the Guarantor hereby waives any rights which the Guarantor may have to require the Lender first to proceed against or enforce any guarantee or security of, or claim payment from the Borrowers or either of them or any Other Guarantor of the Borrowers' obligations to the Lender before claiming from the Guarantor under this Guarantee and Indemnity as well as all other rights, remedies, defences or exceptions (if any) which are or may be given to a guarantor by any applicable law including without limitation (and notwithstanding the provisions of Clause 19) Articles 853, 855, 856, 858, 859, 860, 861, 862, 863, 864, 866, 867 and 868 of the Greek Civil Code (or any statutory re enactment or modification thereof).

7.4 If at any time any provision of this Guarantee and Indemnity is invalid, illegal or unenforceable in any respect that provision shall be severed from the remainder and the validity, legality and enforceability of the remaining provisions shall not be affected or impaired in any way.

7.5 The Lender may, but shall not be obliged to, resort for its own benefit to any other means of payment at any time and in any order as it thinks fit without releasing or reducing the Guarantor's Liabilities hereunder.

## 8. Undertakings

8.1 The Guarantor hereby undertakes to the Lender:

8.1.1 to obtain promptly at any time and from time to time such registrations, licences, consents and approvals as may be required in respect of this Guarantee and Indemnity under any applicable law or regulation to enable it to perform and discharge its duties and liabilities hereunder and thereunder and promptly supply the Lender with copies thereof; and

8.1.2 to ensure that at all times the claims of the Lender against it under this Guarantee and Indemnity rank at least *pari passu* with the claims of all its other unsecured creditors save those whose claims are preferred by any bankruptcy, insolvency or other similar laws of general application.

8.1.3    to comply and to ensure and procure that each of the Borrowers and any Other Guarantor shall comply with all covenants and undertakings set out in the Financial Agreement and the other Finance Documents.

8.2    The Guarantor further hereby undertakes with the Lender that throughout the Security Period the Guarantor shall comply with the following provisions of this Clause 8.2 except as the Lender, otherwise permits:

8.2.1    to maintain the corporate existence of the Guarantor under the laws of the Marshall Islands and comply with all relevant legislation and laws and regulations applicable to it;

8.2.2    to execute and/or procure the execution of any further document reasonably required by the Lender in order to perfect or complete the security created by this Guarantee and Indemnity and the other Finance Documents;

8.2.3    promptly to notify the Lender in writing of any Event of Default or an event which with the giving of notice or passage of time or satisfaction of any other condition or any combination of the foregoing may become an Event of Default and of the steps (if any) which are being taken to nullify or mitigate its effect and of any dispute between the Guarantor, and the Borrowers or either of them, under the Finance Documents or any of them and of any occurrence of which it becomes aware which might adversely affect the ability of the Borrowers or either of them and/or the Guarantor to perform and discharge their respective duties and liabilities under the Financial Agreement and/or this Guarantee and Indemnity and/or the other Subject Documents;

8.2.4    not to and ensure and procure that the relevant Manager(s) shall not dissolve, merge into or consolidate with any other company or person and procure that no change in the management or the legal or beneficial ownership of the Borrowers, the relevant Manager(s) and the Ships shall be effected;

8.2.5    not to and to procure that neither Borrower will amend, modify, vary or supplement or terminate or agree to any amendment, modification, variation or supplement or cancellation of any of the Subject Documents;

8.2.6    not to change the nature of its business or commence any business other than the ownership and operation of ships, as permitted by the Financial Agreement and the other Finance Documents;

8.2.7    to ensure and procure that throughout the Security Period each Borrower shall be a wholly owned Subsidiary of the Guarantor;

8.2.8    to ensure that no change of Control in the Guarantor shall occur without the Lender's prior written consent;

8.2.9      to pay and to ensure and procure that the other Security Parties shall pay all Taxes, assessments and other governmental charges when the same fall due, except to the extent that the same are being contested in good faith by appropriate proceedings and adequate reserves have been set aside for their payment if such proceedings fail and ensure and procure that all relevant tax returns of the Guarantor and the other Security Parties shall be properly and timely filed;

8.2.10      without prejudice to its obligations under Clause 8.2.3 to send (or procure that it is sent) to the Lender as soon as the same is instituted (or, to the knowledge of the Guarantor threatened), details of any litigation, arbitration or administrative proceedings against or involving the Borrowers or either of them, the Guarantor, the other Security Parties (or any of them) or the Ships (or either of them) which is likely to have a material adverse effect on the Borrowers or either of them, the Guarantor, the other Security Parties (or any of them) or the operation of the Ships (or any of them);

8.2.11      not to amend its Articles of Incorporation and By-Laws or other constitutional documents;

8.2.12      to comply and to ensure and procure that the Borrowers and the other Security Parties will comply with all laws regulations treaties and conventions applicable to the Guarantor, the Borrowers, the other Security Parties and the Ships and to ensure and procure that the Borrowers shall carry on the Ships all certificates and other documents which may from time to time be required to evidence such compliance;

8.2.13      to maintain and ensure and procure that the Borrowers and any Other Guarantor shall maintain with the Lender to the credit of any account held with the Lender (including the Earnings Accounts) free cash deposits having minimum average quarterly balances of an aggregate amount equal to the interest payable under the Financial Agreement for the next three (3) months;

8.2.14      to supply the Lender with two (2) copies of (i) the annual Financial Statements of the Group audited by the Auditors as soon as available but in any event not later than one hundred and eighty (180) days after the end of the relevant period to which they relate starting with the 2009 Financial Statements and (ii) the quarterly unaudited Financial Statements of the Group as soon as available but in any event not later than ninety (90) days after the end of the relevant quarterly period starting with accounts for the quarterly period ending 31 December 2009 and (iii) such other information with regard to the business, properties or condition, financial or otherwise, of each member of the Group as the Lender may from time to time reasonably request;

8.2.15      to procure that the Financial Statements to be delivered from time to time in accordance with Clause 8.2.14 shall be prepared in accordance with the Applicable Account Principles;

8.2.16      to deliver to the Lender such documents and evidence as the Lender shall from time to time require relating to the verification of identity and knowledge of the Lender's customers and the compliance by the Lender with all necessary "**know your customer**" or similar checks, always on the basis of applicable laws and regulations or the Lender's own internal guidelines, in each case as such laws, regulations or internal guidelines apply from time to time.

8.3      The Guarantor confirms that it has not taken, and will not take without the prior written consent of the Lender (and then only on such terms and subject to such conditions as the Lender may impose), any security from the Borrowers or either of them or from any other person (other than the Borrowers and who has given or who may in the future give to the Lender any security, guarantee or indemnity for or in relation to the Indebtedness (each such person being hereinafter referred to as "**Surety**") in connection with this Guarantee and Indemnity, and any security taken by the Guarantor notwithstanding this Clause shall be held by the Guarantor in trust for the Lender absolutely as a continuing security for the Guarantor's Liabilities.

8.4      Until all claims of the Lender in respect of the Indebtedness have been discharged in full:

(i)      the Guarantor shall not be entitled to participate in any security held or sums received by the Lender in respect of all or any part of the Indebtedness;

(ii)      the Guarantor shall not stand in the place of, or be subrogated for the Lender in respect of any security, nor take any step to enforce any claim against the Borrowers or either of them or any Surety (or their respective estates or effects), nor claim or exercise any right of set off or counterclaim against the Borrowers or either of them or any Surety, nor make any claim in the bankruptcy or liquidation of the Borrowers or either of them or any Surety in respect of any sums paid by the Guarantor to the Lender or in respect of any sum which includes the proceeds of realisation of any security at any time held by the Lender in respect of any of the Guarantor's Liabilities hereunder; and

(iii)      the Guarantor shall not take any steps to enforce any claim which it may have against the Borrowers or either of them or any Surety without the prior written consent of the Lender and then only on such terms and subject to such conditions as the Lender may impose.

**9.    Variations**

The Lender shall have the right and power at all times whether before or after any demand hereunder for payment and without prejudice to the terms of this Guarantee and Indemnity so that the Guarantor shall not be exonerated or discharged hereunder or its liability in any way be limited, to:

9.1    vary the amounts of principal payable in respect of the Facility, the date(s) for payment thereof or vary or increase the rate of interest, the fees and other amounts payable under the Financial Agreement and/or the Master Agreement and/or the other Finance Documents or vary or waive any of the other terms and conditions of the Financial Agreement and/or the Master Agreement and/or the other Finance Documents;

9.2    grant to the Borrowers or either of them or to any other person any waiver or extension of time; and

9.3    release, vary or waive any securities, guarantees or rights which the Lender may now or hereafter have from or against the Borrowers or either of them or any other person.

**10.    Waiver**

10.1    No failure or delay on the part of the Lender in exercising any right, power, discretion or remedy under or pursuant to this Guarantee and Indemnity nor any actual or alleged course of dealing between the Lender and the Guarantor shall operate as a waiver of, or acquiescence in, any default on the part of the Guarantor, unless expressly agreed to do so in writing by the Lender, nor shall any single or partial exercise by the Lender of any right, power, discretion or remedy preclude any other or further exercise of that right, power, discretion or remedy or the exercise by the Lender of any other right, power, discretion or remedy.

10.2    The granting of time or indulgence by the Lender to, or compounding with, any other person or company liable to the Lender on any guarantee and indemnity or any security or negotiable instrument for the time being held by the Lender or to which the Lender may be entitled pursuant to the Finance Documents shall not in any way prejudice the rights of the Lender against the Guarantor hereunder.

10.3    This Guarantee and Indemnity is in addition to any other security, guarantee or indemnity now or in the future held by the Lender in respect of the Indebtedness, whether from the Borrowers, the Guarantor, any Other Guarantor or any other person, and shall not merge with, prejudice or be prejudiced by any such security, guarantee or indemnity or any contractual or legal right of the Lender.

10.4    It shall not be necessary for the Lender before claiming payment hereunder to endeavour to enforce any other guarantee and indemnity or security whether from the Guarantor, the Borrowers or either of them, or any other person and the Lender may

enforce this Guarantee and Indemnity either before or after resorting to any other means of payment without entitling the Guarantor to any benefit from or share in any such other means of payment until the expiry of the Security Period.

10.5   The Lender has the right and power to claim all amounts due and payable hereunder against the Borrowers or either of them and/or against the Guarantor and/or against any third party in such order and at such time as the Lender in its absolute discretion consider to its advantage.

10.6   The rights and powers of the Lender hereunder are cumulative and in addition to any rights and powers under law or otherwise.

## 11.   Continuing Guarantee, Discharge and Set-Off

11.1   This Guarantee and Indemnity shall be a continuing guarantee and remain in full force and effect until all amounts due and payable under the Financial Agreement and/or the other Finance Documents are paid in full to the Lender (which expression shall not include payment of a dividend in liquidation or bankruptcy of less than one hundred percent (100%)) notwithstanding the liquidation of the Borrowers or either of them or any change in the constitution of the Borrowers or either of them or of the Lender or the absorption of or amalgamation by the Lender in or with any other entity or the acquisition of all or any part of the assets or undertaking of the Lender by any other entity. The Lender may make claims and demands under this Guarantee and Indemnity without limit of number.

11.2   Any amounts received under or in connection with this Guarantee and Indemnity may be placed to the credit of a suspense account for as long as the Lender shall consider appropriate, and the Lender may prove in respect of all amounts due from the Borrowers or either of them or any other person liable in the event of any insolvency, liquidation, composition or arrangement proceedings.

11.3   The Guarantor hereby agrees that the Lender shall have the right at any time, upon notice to set-off or transfer any amounts standing to the credit of the Guarantor alone or jointly in any account with the Lender (whether current, deposit or otherwise whatsoever and whether subject to notice or not) in any currency against the liability of the Guarantor hereunder or under any other agreement with or facility made available to the Guarantor by the Lender.

## 12.   Documents, etc.

The Guarantor hereby undertakes to execute all further deeds and documents that the Lender may reasonably require to give effect and validity to the security constituted by this Guarantee and Indemnity.

11

**13.   Transfer**

13.1   In the event that the rights of the Lender under the Financial Agreement and/or the Finance Documents are assigned or transferred in whole or in part by the Lender pursuant to Clause 34.3 of the Financial Agreement then the Lender may assign or transfer all or part (as the case may be) of its rights, powers and the benefit of this Guarantee and Indemnity to the assignee or transferee of the assigned or transferred part of the Facility.

13.2   This Guarantee and Indemnity shall not be assigned or transferred by the Guarantor except with the prior written consent of the Lender (which the Lender shall have full power to withhold).

13.3   This Guarantee and Indemnity shall bind the permitted assigns and successors in title to the Guarantor.

**14.   Release**

14.1   Any release or settlement between the Guarantor and the Lender shall be conditional upon no security, disposition or payment to the Lender by the Borrowers, the Guarantor or any other person being avoided, reduced or limited pursuant to any provisions under any law (whether English or foreign) in force from time to time relating to bankruptcy, liquidation or insolvency or any (in the opinion of the Lender) analogous circumstance and if there shall be any avoidance or limitation as aforesaid the Lender shall have the right to enforce all of its rights, powers, discretions and remedies under or pursuant to this Guarantee and Indemnity against the Guarantor subsequently as if such release, discharge, arrangement or settlement had not occurred.

14.2   If any amounts paid to the Lender in reduction of the amounts hereby guaranteed have to be repaid by the Lender on the ground of unfair or fraudulent preference or on any other ground, the Lender shall have the same rights hereunder against the Guarantor as if such amounts had never been paid to the Lender.

14.3   Following the repayment of the Indebtedness, the Lender shall be entitled to retain any security which it may hold for the liabilities of the Guarantor under this Guarantee and Indemnity until the Lender is satisfied that it will not have to make any payment under any law referred to in Clause 14.1.

**15.   Subordination**

15.1   The Guarantor agrees to and does hereby subordinate any and all present or future claims whatsoever that it may have against any Other Guarantor of the Borrowers' obligations to the Lender or the Borrowers or either of them to any and all claims by the Lender for amounts owing from the Borrowers or either of them to the Lender or any other member of the Group under the Financial Agreement and/or the Master

Agreement and/or the other Finance Documents and undertakes to deliver such further documents as the Lender may reasonably request evidencing such subordination.

15.2    Until all amounts due under the Financial Agreement and the other Finance Documents from the Borrowers or either of them to the Lender shall have been paid in full the Guarantor shall have no right of subrogation and agrees not to:

15.2.1        demand or accept repayment in whole or in part of any loans or advances then or thereafter due to the Guarantor from the Borrowers or either of them or to demand or accept any security in respect thereof, or to assign or charge the same as security; or

15.2.2        take any action or to submit or enforce any claim against the Borrowers or either of them; or

15.2.3        claim any set-off or counterclaim against the Borrowers or either of them; or

15.2.4        claim or prove in competition with the Lender in any bankruptcy or liquidation or accept the benefit of any share in any payment or composition from the Borrowers or either of them or any other guarantor or in any other guarantee or security now or hereafter held by the Lender.

15.3    Any security created or amount received in breach of this Clause 15 shall be held on trust for the Lender and forthwith transferred to the Lender on demand.

**16.    Invalidity**

In the event that any term or condition of this Guarantee and Indemnity is rendered or declared illegal, invalid or inoperative in whole or in part by any statute, rule or regulation or any decision of any court or tribunal of competent jurisdiction then such determination or declaration shall neither affect the validity of any other term or condition of this Guarantee and Indemnity which (save as aforesaid) will remain in full force and effect nor the legality, validity or enforceability of such term or condition under the law of any other jurisdiction.

**17.    Guarantee and Indemnity Document**

This Guarantee and Indemnity shall remain at all times the property of the Lender even after all amounts guaranteed hereby have been paid in full.

**18.    Notices**

18.1    Unless otherwise specifically provided, any notice under or in connection with this Guarantee and Indemnity shall be given by letter or fax; and references in this

13

Guarantee and Indemnity to written notices, notices in writing and notices signed by particular persons shall be construed accordingly.

18.2   A notice shall be sent:

(a)   to the Guarantor:        c/o STAMFORD NAVIGATION INC.
                              1-7 Flessa & 83 Akti Miaouli
                              185 38 Piraeus
                              Attiki, Greece
                              Fax No.: +30 213 0148408

(b)   to the Lender:          24B Kifissias Avenue
                              151 25 Maroussi
                              Attiki, Greece
                              Fax No: +30 210 6896358

or to such other address as the relevant party may notify the other in writing.

18.3   Subject to Clauses 18.4 and 18.5:

(a)   a notice which is delivered personally or posted shall be deemed to be served, and shall take effect, at the time when it is delivered;

(b)   a notice which is sent by fax shall be deemed to be served, and shall take effect, two (2) hours after its transmission is completed.

18.4   However, if under Clause 18.3 a notice would be deemed to be served:

(a)   on a day which is not a Banking Day in the place of receipt; or

(b)   on such a Banking Day, but after 5 p.m. local time;

the notice shall (subject to Clause 18.5) be deemed to be served, and shall take effect, at 9 a.m. on the next day which is such a Banking Day.

18.5   Clauses 18.3 and 18.4 do not apply if the recipient of a notice notifies the sender within one (1) hour after the time at which the notice would otherwise be deemed to be served that the notice has been received in a form, which is illegible in a material respect.

18.6   A notice under or in connection with this Guarantee and Indemnity shall not be invalid by reason that the manner of serving it does not comply with the requirements of this Guarantee and Indemnity or, where appropriate, any other Finance Document under which it is served if the failure to serve it in accordance with the requirements of this Guarantee and Indemnity or other Finance Document, as the case may be, has not caused any party to suffer any significant loss or prejudice.

18.7    Any notice under or in connection with this Guarantee and Indemnity shall be in English.

18.8    In this Clause "notice" includes any demand, consent, authorisation, approval, instruction, waiver or other communication.

## 19.    Proper Law and Jurisdiction

19.1    This Guarantee and Indemnity shall be governed by and construed in accordance with English Law.

19.2    Subject to Clause 19.3, the courts of England shall have exclusive jurisdiction to settle any disputes, which may arise out of or in connection with this Guarantee and Indemnity.

19.3    Clause 19.3 is for the exclusive benefit of the Lender, which hereby reserves the right:

19.3.1    to commence proceedings in relation to any matter which arises out of or in connection with this Guarantee and Indemnity in the courts of the Republic of Greece and/or any country other than England or Greece and which have or claim jurisdiction to that matter; and

19.3.2    to commence such proceedings in the courts of any such country or countries concurrently with or in addition to proceedings in England or Greece or without commencing proceedings in England or Greece.

The Guarantor shall not commence any proceedings in any country other than England in relation to a matter, which arises out of or in connection with this Agreement.

19.4    The Guarantor irrevocably appoints HFW Nominees Limited, presently at Friary Court, 65 Crutched Friars, London EC3N 2AE, England to act as its agent to receive and accept on its behalf any process or other document relating to any proceedings in the English courts which are connected with this Agreement.

19.5    The Guarantor irrevocably designates and appoints Mr. George Livanos, an attorney-at-law with offices at 2 Thesmoforiou Street, Piraeus 18454, Greece, as agent for the service of process in Greece ("*antiklitos*") and agrees to consider any legal process or any demand or notice made served on behalf of the Lender on the said agent as being made to the Guarantor. The designation of such an authorized agent ("*antiklitos*") shall remain irrevocable until all Indebtedness shall have been paid in full in accordance with the terms of this Guarantee and Indemnity and the other Finance Documents.



19.6    The Guarantor irrevocably waives any objection which it may now or in the future have to the laying of the venue of any proceedings in any court referred to in this Clause, and any claim that those proceedings have been brought in an inconvenient or inappropriate forum, and irrevocably agrees that a judgment in any proceedings commenced in any such court shall be conclusive and binding on it and may be enforced in the courts of any other jurisdiction.

19.7    Nothing in this Clause 19 shall exclude or limit any right which the Lender may have (whether under the law of any country, an international convention or otherwise) with regard to the bringing of proceedings, the service of process, the recognition or enforcement of a judgment or any similar or related matter in any jurisdiction.

19.8    In this Clause 19, "proceedings" means proceedings of any kind, including an application for a provisional or protective measure or enforcement court order (*diatagi pliromis*).

IN WITNESS whereof this Guarantee and Indemnity has been duly executed as a deed the day and year first above written.



**EXECUTION PAGE**

**EXECUTED** as a **DEED**                    )
by MICHAIL S. LIVANOS              )
for and on behalf of                            )
**GRANDUNION INC.**                      )
in the presence of:                             )

> **VASILIKI KATSOULI**
> Attorney-at-law
> **V&P Law Firm**
> 15 Filikis Eterias Square,
> 106 73 Athens, Greece

**EXECUTED** as a **DEED**                    )
by                                                       )
and by          CHARLES M.              )
for and on behalf of                            )
**MARFIN EGNATIA BANK Societe Anonyme** )
in the presence of:                             )

CHARLES M.

Stavros Yagos

> **VASILIKI KATSOULI**
> Attorney-at-law
> **V&P Law Firm**
> 15 Filikis Eterias Square,
> 106 73 Athens, Greece

17

**SCHEDULE 1**

**Representations and Warranties**

1.      The Guarantor is duly formed and validly existing under the laws of the Marshall Islands and has the power and authority to own its assets and carry on business in each jurisdiction in which it owns assets or carries on business.

2.      The Guarantor has power to grant this Guarantee and Indemnity and to perform and discharge its duties and liabilities hereunder and it has taken all necessary action (whether corporate or otherwise) required to authorise the execution, delivery and performance of this Guarantee and Indemnity.

3.      The execution, delivery and performance of this Guarantee and Indemnity will not contravene or exceed the powers granted to the Guarantor by, or any provision of, any law or regulation in any jurisdiction to which the Guarantor is subject, any order or decree of any governmental agency or court of or in any jurisdiction to which the Guarantor is subject, the certificate of incorporation and the Articles of Incorporation and By-Laws of the Guarantor or any mortgage, deed, contract or agreement to which the Guarantor is a party and which is binding upon the Guarantor's assets, and will not cause any Encumbrance to arise over or attach to all or any part of its revenues or assets nor require the Guarantor to create any such Encumbrance.

4.      All consents, licences, approvals, registrations, authorisations or declarations (including, without limitation, all foreign exchange control approvals) in any jurisdiction to which the Guarantor is subject to lawfully to enter into and perform and discharge its duties and liabilities under this Guarantee and Indemnity and to ensure that the duties and liabilities of the Guarantor hereunder are legal, valid and enforceable in accordance with the terms of this Guarantee and Indemnity and to make this Guarantee and Indemnity admissible in evidence in such aforesaid jurisdictions have been obtained or made and are in full force and effect.

5.      This Guarantee and Indemnity constitutes the legal, valid, binding and unconditional duties and liabilities of the Guarantor, enforceable against the Guarantor in accordance with the terms thereof.

6.      Neither the Guarantor nor any other Security Party has failed to pay when due any material amount or to perform any material duty under the provisions of any agreement relating to indebtedness in excess in aggregate of Five hundred thousand Dollars ($500,000) to which it is a party or by which it may be bound and no event has occurred and is continuing which constitutes, or which with the giving of notice or lapse of time or both would constitute, a material breach or default by the Guarantor under any such agreement.

7.      No litigation or administrative proceedings in any court, arbitration tribunal or governmental authority are pending or, to the knowledge of the Guarantor, threatened

against the Guarantor or any other Security Party or any of its respective assets which might have a material adverse effect on the Guarantor's ability to perform and discharge its duties and liabilities hereunder.

8.      The information provided to the Lender in relation to this transaction is true and correct in all material respects and does not omit any information necessary to make any of the information so provided not misleading.

9.      The selection of English law to govern this Guarantee and Indemnity is a valid and binding selection and the submission to the jurisdiction of the High Court of Justice in London, England is a valid and binding submission.

10.     The Guarantor is not entitled to claim any immunity in relation to itself or its assets under any law or in any jurisdiction in connection with any legal proceedings, set-off or counterclaim relating to this Guarantee and Indemnity or in connection with the enforcement of any judgment or order arising from such proceedings.

11.     No Taxes are imposed by withholding or otherwise on any payment to be made by the Guarantor under this Guarantee and Indemnity and/or any other of the Subject Documents or are imposed on or by virtue of the execution or delivery of this Guarantee and Indemnity and/or any other of the Subject Documents or any document or instrument to be executed or delivered hereunder and thereunder and all relevant tax returns have been filed.

12.     The Financial Statements are complete and correct and present fairly the position of the members of the Group and the results of the operations of the members of the Group ended on such date, and have been prepared in accordance with the Applicable Accounting Principles consistently applied and give a true and fair view of the financial condition, assets and liabilities of the members of the Group therein stated at the date to which such Financial Statements have been prepared and since that date there has been no adverse change in the financial conditions of the business, assets or operation of the members of the Group therein stated or the Group taken as a whole (as the case may be);

13.     Save as disclosed to the Lender in writing the Guarantor has not incurred any indebtedness or authorised or accepted any capital commitments other than that normally associated with the day to day operation of the Ships, where appropriate.

The representations and warranties of the Guarantor set out above shall survive the execution of this Guarantee and Indemnity and shall be deemed to be repeated on each Drawdown Date and on each Interest Payment Date, throughout the Security Period, with respect to the facts and circumstances existing at each such time as if made at such time.



**SCHEDULE 2**

**Form of Financial Agreement**